UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                 CASE NO.: 25-20127-CR-ALTONAGA

PABLO SILVERIO REBOLLIDO,

    Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant PABLO SILVERIO REBOLLIDO by and through his undersigned counsel and hereby files this memorandum in anticipation of his upcoming sentencing and requests a downward variance and/or downward departure from the advisory guideline range and in support thereof states as follows:

1. On May 16, 2025, this Defendant pled guilty to Count One of the information in this case which generally charged him with one count of wire fraud in violation of 18 U.S.C. §1343. (DE #17)

2. Currently, sentencing is set for *Tuesday, September 9, 2025 at 9:00 a.m.* at the United States Courthouse in Miami. (DE #30)

### *Offense Summary*

PABLO SILVERIO REBOLLIDO is 48 years of age and though not married he has maintained a steady relationship with his significant other for since 2007 or a period of 18 years. He is a proud father of two children ages 16 and 9. His older child has been diagnosed with severe learning disabilities and has been in learning disabled classes most of his life. The defendant is extremely supportive of his son

and actively participates in his educational needs and programming for his distinct educational needs.

For most of his adult life the defendant has been gainfully employed as correctly indicated within the PSI.  See PSI at ¶98-105.  Though the instant case is connected with his last employment in Miami, Mr. Silverio Rebollido has complied with this court's order and secured steady employment in North Florida where he now resides.  Mr. Silverio Rebollido lived what best can be described as an ideal suburban life.

The facts underlying this defendant's conviction are not in dispute.  PABLO SILVERIO REBOLLIDO was never formally arrested for his involvement herein having voluntarily surrendered to this court at a date and time as requested by the government.  The circumstances surrounding the government becoming even aware of the facts and circumstances of this case are nothing less than remarkable.

As partially outlined in ¶80 of the PSI, on or about February 1, 2024, Mr. Silverio Rebollido appeared at the FBI's offices in Miramar, Florida without an appointment.  He was not under either active or passive investigation by law enforcement, either state or federal.  He knew he had done wrong and wished to self report and confess to everything he had done with his business to defraud investors.  At this time no "victim" had reported his conduct to law enforcement.  Mr. Silverio Rebollido could not live with himself and what he had done to the investors.  With nowhere else to turn and a desire to self report his conduct to law enforcement, he sought to turn himself in and voluntarily disclose everything to the FBI.

Obviously, the agents of the FBI were very skeptical, as would most law

enforcement be, as they had no prior knowledge of Mr. Silverio Rebollido and of course the conduct that ultimately led him to be charged in this case. Mr. Silverio Rebollido simply showed up at the FBI offices with no prior appointment, warning or notice. The skepticism of the FBI was shown when they declined to speak with him that day. However, the FBI agents, much to their credit, provided Mr. Silverio Rebollido with their contact information. After being turned away, Mr. Silverio Rebollido called 911 stating he would harm himself unless law enforcement heard his confession and what he had done to defraud investors. He was committed by local law enforcement pursuant to the Baker Act.

However, the next day he voluntarily reported to the FBI as requested and was extensively interviewed by agents. Mr. Silverio Rebollido was not under arrest and he was told by the agents that since he was there of his own free will, he could leave at any time. Mr. Silverio Rebollido consented to his interview being recorded and made a full confession of his involvement in this Ponzi scheme. He freely admitted to law enforcement that he was using the money from newer investors to pay the older investors. In his own words uttered that day, he described that "he was there to report that he has been doing something bad with his company and try to help people and himself to stop this."

In addition to an extensive and lengthy recorded statement, Mr. Silverio Rebollido provided a written confession as well. He provided law enforcement with the names and identifying information of others who were involved in this scheme. In addition, he gave law enforcement access to his electronic devices and his financial information. Mr. Silverio Rebollido was interviewed by the agents on more than one

occasion however was never formally arrested by law enforcement. This matter culminated in his voluntary surrender to this Court on April 11, 2025 and subsequent guilty plea just one month later.

For this court's information and edification, Mr. Silverio Rebollido expressed a desire to plead guilty when went to the FBI offices in early February 2024. He cooperated fully and totally with law enforcement without counsel and without any promises until he was notified via letter by the prosecutor that he was a target of the investigation on or about August 1, 2024. As a target of the government's investigation, the undersigned counsel was appointed pursuant to the Criminal Justice Act and, at the defendant's request, all steps necessary for an immediate resolution of this case was undertaken. These negotiations saved the government the time and effort of empaneling a grand jury in his matter. Mr. Silverio Rebollido promptly pled guilty to the one count information promptly as he promised to do when he first met with the agents more than one year before.

### *Variances Generally*

Notwithstanding the above, "the court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes of 18 U.S.C. § 3553(a). As this Court is surely aware, district courts are now free from the mandatory nature of the Federal Sentencing Guidelines. The Supreme Court's decisions after *Booker* emphasize that district courts have wide discretion to fashion an appropriate sentence and that courts of appeal will not disturb those sentences absent an abuse of discretion. *Gall v. United States,* 522 U.S. 38 (2007) (finding a variance to probation for a drug offender reasonable); *Kimbrough v. United States*, 522 U.S. 85

(2007)(holding that the Sentencing Guidelines are merely advisory in every respect; judges are free to disagree with them and sentence individuals reasonably).

Courts are free to depart from the Guidelines based solely upon disagreement with the Guidelines so long as the court states its disagreement along with sufficient justification for the extent of the departure. See *United States v. Parris,* 573 F. Supp. 2nd 744, 754-755 (E.D. N.Y. 2008)(citing *United States v. Cutler*, 520 F. 3d 136 (2nd Cir. 2008)

In particular, the Eleventh Circuit repeatedly has affirmed below guideline sentences after *Booker*. See *United States v. Irey*, 563 F. 3d 1223 (11th Cir. 2009)(affirming variance from level 43 (life) to 210 months in "utterly gruesome" case recognizing that sentencing is the most difficult job a district judge performs); *United States v. Anderson*, 267 Fed. App'x 847 (11th Cir. 2008)(affirming sentence of probation with home-confinement for a white collar defendant where Guidelines were 18 to 24 months and the prosecutor was requesting 18 month sentence, explaining that under Gall, district courts had wide discretion at sentencing); *United States v. McBride*, 511 F. 3d 1293 (11th Cir. 2007)(affirming variance from 151 to 188 months to 84 months in child pornography case; *United States v. Clay*, 483 F. 3d 739 (11th Cir. 2007)(affirming 60 month sentence even though the Guidelines were 188 to 235 months based on post-offense rehabilitation; *United States v. Mathis*, 186 Fed. App'x 971 (11th Cir. 2006)(50% percent variance from the top end of Guidelines affirmed in Hobbs Act extortion and obstruction case); *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006)(affirming 72 month sentence even though low end of Guidelines was 151 months, more than double sentence imposed); *United States v.*

*Halsema*, 180 Fed. App'x 103 (11th Cir. 2006)(unpublished)(affirming 24 month sentence even though Guidelines were 57 to 71 months). To that end, PABLO SILVERIO REBOLLIDO offers the following:

In *Pepper v. United States* 131 S.Ct. 1229 (2011), the United States Supreme Court emphasized the need for individualized sentencing based not only on the crime but on the defendant. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the sentencing guidelines are ***advisory* only**, not mandatory. The other factors set forth in 18 U.S.C. §3553 (a) must also be considered in fashioning the appropriate sentence. These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. *Booker*, 125 S. Ct. at 764; see also *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007).

After *Booker*, the sentencing Guidelines are advisory, and the sentencing court, in its own discretion, can move below the advisory Guidelines range without a motion for downward departure as long as the resulting sentence is reasonable. *United States*

*v. Williams*, 435 F.3d 1350 (11th Cir. 2006)

In rendering the Sentencing Guidelines advisory, *Booker* established a new independent limit on sentences that may be imposed. The primary sentencing mandate of §3553(a) states that a court must impose a minimally sufficient sentence to achieve the statutory purposes of punishment – justice, deterrence, and rehabilitation are set forth in the beginning sentence where it states that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2).

"Just because a consideration was improper under the mandatory Guidelines regime does not mean that it is necessarily improper under the advisory Guidelines regime." *United States v. Garcia*, 497 F.3d 964, 971-72 (9th Cir. 2007). Therefore, a sentencing judge could well conclude that a . . . discouraged factor did not quite justify a departure from the guidelines . . . but might justify a somewhat shorter sentence under a reasonableness standard. *United States v. Thurston* 456 F.3d 211 (1st Cir. 2006)

### *Judiciary Sentencing Information (JSIN) Platform*

In paragraph 131 of the PSI the probation officer has "not identified any other factors that may warrant a departure and/or variance." However, multiple grounds for a variance and/or a downward departure most certainly exist. Initially, this court should look to the judiciary sentencing information platform which is maintained by the United States Sentencing Commission as one of the bases for a variance.

The defendant has researched the Judiciary Sentencing Information (JSIN) web site operated by the United States Sentencing Commission and since the PSI was

prepared, the sentences imposed upon defendants who have been guilty of similar conduct is much lower than reported by probation at ¶120.

According to the United States Sentencing Commission, the Judiciary Sentencing INformation (JSIN) platform is an online sentencing data resource specifically developed with the needs of judges in mind. The platform provides quick and easy online access to sentencing data for similarly situated defendants. JSIN expands upon the Sentencing Commission's longstanding practice of providing sentencing data at the request of federal judges by making some of the data provided through these special requests more broadly and easily available. If the court does consider the sentencing information provided by JSIN as part of its consideration of the factors in 18 U.S.C. §3553(a) when imposing sentence, it should do so only after considering the properly calculated guideline range and any applicable departures provided for in the Guidelines Manual.

JSIN provides cumulative data based on five years of sentencing data for offenders sentenced under the same primary guideline, and with the same Final Offense Level and Criminal History Category selected. JSIN first provides statistical information relating to the sentence relative to the guideline range for the selected cell. After excluding cases involving a §5K1.1 substantial assistance departure, JSIN next provides a comparison of the proportion of offenders sentenced to a term of imprisonment to those sentenced to a non-imprisonment sentence. Finally, JSIN provides the national average and median "length of imprisonment" and "sentence length" for offenders in the selected cell.

In sum, the JSIN tool enables a user to obtain information about offenders

sentenced under the same primary guideline, and with the same Final Offense Level and Criminal History Category selected, for the past five fiscal years.

Based on the variance requests above, an analysis was done on August 13, 2025 using the JSIN tool for Mr. Silverio Rebollido based on the guideline analysis performed by the United States Probation Office currently outlined in the PSI and not including the defendant's previously filed objection:

During the last five fiscal years (FY2020-2024), there were 30 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 36 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 30 defendants (100%) who received a sentence of imprisonment in whole or in part, *the average length of imprisonment imposed was 120 month(s) and the median length of imprisonment imposed was 120 month(s).*

### *Extraordinary Acceptance of Responsibility*

In almost all criminal cases, courts grant the reduction for acceptance of responsibility based on a single factor: entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct.  Most courts do not consider additional conduct demonstrating acceptance, remorse or atonement unless the defendant qualifies for a reduction for substantial assistance. See *United States v. Milne*, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005)

"The mere existence of section 3E1.1(a) does not preclude the sentencing court

from making an additional departure in the case where the defendant manifests an extraordinary acceptance of responsibility." *United States v. Brown*, 985 F.2d 478, 481 (9th Cir.1993); accord *United States v. Crumb*, 902 F.2d 1337, 1339 (8th Cir.1990) ("The court may also depart, 'even though the reason for departure is listed elsewhere in the guidelines . . . if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.' ") (quoting U.S.S.G. § 5K2.0)); *United States v. Janusz*, 986 F.Supp. 328, 330 (D. Md.1997) ("[A]cceptance of responsibility, although taken into account in applying the adjustment under U.S.S.G. § 3E1.1, can provide a basis for a departure when present to such an exceptional degree that it cannot be characterized as typical.") (citing *United States v. Rogers*, 972 F.2d 489, 493 (2d Cir.1992); *United States v. Lieberman*, 971 F.2d 989, 996 (3d Cir.1992)).

The Eighth Circuit has long recognized that extraordinary acceptance of responsibility may be a proper ground for a downward departure pursuant to section 5K2.0, despite section 3E1.1's express contemplation of acceptance of responsibility. See, e.g., *United States v. Oligmueller*, 198 F.3d 669, 671 (8th Cir.1999) (recognizing district court's authority to depart downward when there are extraordinary efforts at restitution, taking the case outside the heartland) (citation omitted); *United States v. Condelee*, 961 F.2d 1351, 1353 (8th Cir.1992) (recognizing sentencing court's discretion to depart downward "in unusual circumstances such as extraordinary restitution"); *United States v. Garlich*, 951 F.2d 161, 163 (8th Cir.1991) (remanding for resentencing because district court should have considered "whether the extent and timing of Garlich's restitution [were] sufficiently unusual to warrant a downward

departure")  See *United States v. Nguyen*, 212 F.Supp.2d 1008 (N.D. Iowa 2002)

The United States District Court for the Eastern District of Tennessee, in *United States v. Stewart*, 154 F.Supp.2d 1336, 1343 (E. D.Tenn.2001), performed an extensive survey of the Guidelines in order to determine whether the Sentencing Commission discouraged departures on the basis of extraordinary acceptance of responsibility.  That court concluded that "[e]xtraordinary acceptance of responsibility is not among the listed [discouraged or forbidden] factors, allowing a conclusion the guidelines do not explicitly discourage departure on this basis." *Id*. Therefore, extraordinary acceptance of responsibility may be an appropriate justification for departure in exceptional circumstances.  Mr. Silverio Rebollido's conduct in alerting the authorities as to his commission of the offense certainly qualifies as exceptional circumstances.

The *Stewart* court also examined other extraordinary acceptance of responsibility cases that addressed the voluntary payment of restitution as extraordinary acceptance of responsibility. See id. (citing *United States v. DeMonte*, 25 F.3d 343, 346 (6th Cir.1994); *United States v. Gee*, 226 F.3d 885, 901–02 (7th Cir.2000); *United States v. Hairston*, 96 F.3d 102, 108 (4th Cir.1996); *United States v. Rogers*, 972 F.2d 489, 492 (2d Cir.1992)). In each of the cases cited, the court of appeals decisions recognized that the Guidelines allow for a departure for extraordinary acceptance of responsibility when the defendant has exhibited greater responsibility for his criminal conduct than was contemplated by section 3E1.1. *Gee*, 226 F.3d at 901 (affirming departure under § 5K2.0 for exceptional acceptance of responsibility and cooperation with government after conviction); *Hairston*, 96 F.3d

at 108–09 (reversing departure based on extraordinary acceptance of responsibility because restitution by defendant was not sufficiently atypical to take the case outside the Guidelines's "heartland"); *DeMonte*, 25 F.3d at 346–49 (rejecting departure based on restitution in this case while recognizing extraordinary restitution may be ground for departure but holding that defendant's extraordinary cooperation in revealing criminal conduct of which the government was wholly unaware warranted departure under § 5K2.0); *Rogers,* 972 F.2d at 493 (affirming departure where defendant emerged from a drug-induced state and, realizing his wrongdoing, turned himself over to the police and confessed).

The *Stewart* court considered these holdings and ultimately determined that "although the guidelines do not specifically encourage consideration of extraordinary acceptance of responsibility as a factor warranting departure, the factor is, at the very least, an acceptable justification for departure in appropriate circumstances." *Stewart*, 154 F.Supp.2d at 1343.

Though the defendant is mindful as to the amount of the intended loss in the instant case, his cooperation with law enforcement in the more than one year prior to his voluntary surrender to this Court also included his all of his assets.  Prior to the time he was notified that he was a target of the investigation, Mr. Silverio Rebollido voluntarily disclosed the existence of various assets to the government and cooperated with the administrative forfeiture of these assets well prior to him being charged in the instant case.  He advised the government of all of his bank accounts which were ultimately frozen and he cooperated with the forfeiture of this funds provided that they were to be returned to the victims.  He has executed all documents

necessary regarding the real estate and the vessel in order that money can be returned to the victims.

During the pendency of the case, Mr. Silverio Rebollido received at least 4 administrative forfeiture letters from the FBI as to the assets that he voluntarily disclosed and ultimately disgorged himself of. Each of the forfeiture letters was met with the following response authorized by Mr. Silverio Rebollido. As an example, below is his September 23, 2024 response as to the bank account funds that were seized by the government after being disclosed by the defendant:

> "In light of Mr. Silverio Rebollido ongoing cooperation into his own offense and the involvement of others in that offense, it is his desire NOT to contest the seizure of the funds in the two above bank accounts. He is under no illusion that criminal charges against him will be forthcoming. ***Mr. Silverio Rebollido's concern is for the repayment of victims of his fraudulent scheme***. He is requesting that I advise you that he will not be contesting the seizure as long as the assets that were seized be solely used for restitution purposes as opposed to being simply forfeited to the government. His desire is that these funds be used to assist in the reimbursement of the victims' losses.

Though most of the cases cited above predate the Supreme Court's *Booker* decision, they shed light on the proposition that extraordinary acceptance would most certainly be a basis for a downward departure pursuant to §5K2.0 of the guidelines as well as a downward variance in the instant case. Therefore, extraordinary acceptance of responsibility that was shown and demonstrated by Mr. Silverio

Rebollido must be a basis for a downward variance from this court.

### *Voluntary Disclosure of the Offense*

A downward departure for voluntary disclosure is recognized as a policy statement within the guidelines for many decades. Section 5K2.16 provides as follows:

"If the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a departure below the applicable guideline range for that offense may be warranted. For example, a downward departure under this section might be considered where a defendant, motivated by remorse, discloses an offense that otherwise would have remained undiscovered. This provision does not apply where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent, *747 or where the defendant's disclosure occurs in connection with the investigations or prosecution of the defendant for related conduct."

The plain language of Section 5K2.16 requires a district court to determine whether the offense was likely to have been discovered absent the defendant's disclosure. As the Ninth Circuit has recognized, the guideline sets forth two requirements for a downward departure: (1) the defendant voluntarily disclosed the existence of, and accepted responsibility for, the offense prior to discovery of the offense; and (2) the offense was unlikely to have been discovered otherwise. *United States v. Brownstein*, 79 F.3d 121, 123 (9th Cir.1996); see also *United States v. Adams*, 996 F.2d 75, 79 (5th Cir.1993) (stating in dicta that Section 5K2.16 applies

where the offense would likely remain undiscovered). The two requirements are plainly stated in the first sentence of Section 5K2.16. *United States v. Besler*, 86 F.3d 745, 746-7 (7th Cir. 1996)

The policy statement gives an example of its application to a defendant who "motivated by remorse, discloses an offense that otherwise would have remained undiscovered." *United States v. Brownstein*, 79 F.3d 121 (9th Cir.1996)

The term "authorities," as used in §5K2.16, refers only to legal authorities, as plainly stated in the Webster's definition: "persons having the legal power to make and enforce the law." Webster's Encyclopedic Unabridged Dictionary of the English Language, p. 100 (1994). The meaning of "authorities," *United States v. Ekeland*, 174 F.3d 902 (7th Cir. 1999) Mr. Silverio Rebollido clearly voluntarily disclosed his conduct to the authorities as this guideline explicitly requires and complied with all of its terms and conditions to be applicable to the facts and circumstances of his case.

WHEREFORE the defendant PABLO SILVERIO REBOLLIDO respectfully requests that this court downwardly vary and/or downwardly depart from the guideline range that is ultimately determined.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record this 17th day of August 2025.

Respectfully submitted,

LAW OFFICES OF PHILIP R. HOROWITZ
Attorney for Defendant SILVERIO REBOLLIDO
9100 South Dadeland Boulevard
Suite #1500
Miami, Florida 33156
Tel.: (305) 670-1915
E-Mail: *HorowitzDefense@aol.com*

　*/s/ Philip R. Horowitz*
By: PHILIP R. HOROWITZ, ESQUIRE
Florida Bar No.: 466557